

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-11-0142-CR

_____

ANTHONY L. TORRES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2010-429166, Honorable Bradley S. Underwood, Presiding

March 26, 2013

MEMORANDUM OPINION

Before Quinn, C.J., and Campbell and Hancock, JJ.

Appellant Anthony Lee Torres appeals from his conviction by jury of the offense of capital murder and the resulting mandatory life sentence. Through one issue, appellant asserts the jury charge contained an error causing him egregious harm. We disagree, and will affirm.

Background

Appellant was charged in a two-count indictment with the murder and the capital murder of Amanda Moreno. Count One alleged that appellant intentionally or knowingly caused Moreno's death "by choking [her] and by striking [her] with [appellant's] hands." Count Two was similar, but alleged that appellant intentionally caused Moreno's death "by choking [her] with [appellant's] hands[1] and by striking [her] with [appellant's] hands. Count Two also contained the added allegation that appellant was "then and there in the course of committing or attempting to commit the offense of robbery of [Moreno]."

At trial, the State proceeded only on Count Two, the capital murder count.[2] Only that count was read to the jury, and appellant's not-guilty plea was entered only to that count. The State's evidence included the testimony of the medical examiner and appellant's written statement confessing to killing Moreno. According to appellant's statement, during an argument he hit Moreno on the side of her head, causing bleeding. He choked her with his hands until she stopped breathing, then choked her with a pair of her child's pants to ensure she was dead. The medical evidence showed Moreno suffered trauma to several parts of her body from blows inflicted on her, and that her death was caused by asphyxia. Appellant took rings from Moreno's fingers and other items, pawned them and used the proceeds to buy crack cocaine.

The court's charge to the jury authorized conviction on the indicted capital murder offense, and on a lesser-included offense of murder. The charge contained the

_____

[1] Emphasis ours.

[2] Count One was later dismissed.

following application paragraphs:

> Now, if you find from the evidence beyond a reasonable doubt that on or about June 11, 2010, in Lubbock County, Texas, the defendant, ANTHONY L TORRES, did then and there intentionally cause the death of an individual, namely Amanda Moreno, by choking the said Amanda Moreno or by striking the said Amanda Moreno with the defendant's hands, and the defendant was then and there in the course of committing or attempting to commit the offense of robbery of Amanda Moreno, then you will find the defendant guilty of capital murder.

> If you find from the evidence beyond a reasonable doubt that on or about June 11, 2010, in Lubbock County, Texas, the defendant, ANTHONY L TORRES, did then and there intentionally cause the death of an individual, Amanda Moreno, by choking the said Amanda Moreno <u>with defendant's hands</u>[3] or by striking the said Amanda Moreno with defendant's hands, but you have a reasonable doubt as to whether the defendant was then and there engaged in the commission or attempted commission of robbery of Amanda Moreno, then you will find the  defendant guilty of the lesser offense of murder.

The jury found appellant guilty of the capital murder, and the trial court assessed the statutorily-required punishment.  This appeal followed.

## Analysis

Appellant's issue on appeal arises from the wording of the application paragraphs of the jury charge.  As appellant sees it, the charge permitted the jury to convict on an "invalid theory of guilt."  Recall, the indictment alleged appellant committed capital murder by choking Moreno with his hands or striking her with his hands.  The application paragraph for the capital murder offense omitted the phrase "with defendant's hands."

---

[3] Emphasis ours.

3

Appellant acknowledges that, from the evidence, the jury rationally could have concluded appellant caused Moreno's death by choking her with his hands or with the child's pants. But, he argues, "Nothing in the charge explains that the means of causing death specifically alleged in the indictment must be proven."[4] There is the difficulty with appellant's contention: for his guilt of capital murder, the law does not require proof of the means of causing death specifically alleged in the indictment.

As alleged against appellant, the elements of capital murder are that appellant intentionally committed murder, that is, intentionally caused the death of Moreno, in the course of committing or attempting to commit robbery. Tex. Penal Code Ann. §§ 19.02(b)(1), 19.03 (West 2012). The manner in which appellant caused Moreno's death, or the means used, are not statutory elements of the offense, and do not affect the allowable unit of prosecution. *Johnson v. State*, 364 S.W.3d 292, 296-97 (Tex.Crim.App. 2012). Discussing a hypothetical case in which a murder indictment alleged death was caused by stabbing with a knife but the proof showed it was caused by bludgeoning with a baseball bat, the court noted, "These methods of committing murder do describe an element of the offense: the element of causation. But murder is a result-of-conduct crime. What caused the victim's death is not the focus or gravamen of the offense; the focus or gravamen of the offense is that the victim was killed." *Id.* at 298 (citations omitted). Viewed with that understanding, the theory of guilt that appellant regards as invalid, a theory permitting his guilt without proof he caused

---

[4] Appellant's brief disclaims an intention to assert an evidentiary sufficiency claim or one asserting a material variance, but we find it is not possible to address his contention regarding what "must be proven" without consideration of evidentiary sufficiency.

4

Moreno's death by choking her with his hands rather than the pair of pants actually is not invalid but is expressly permitted by our penal laws.

Appellant cites *Ex parte Drinkert*, 821 S.W.2d 953 (Tex.Crim.App. 1991), in which the court granted habeas corpus relief, in part because of counsel's failure to object to a jury charge that permitted conviction based on either of two counts. One count properly alleged an offense of murder but the other alleged felony murder in a manner not permitted by law. *Id.* at 955. The court characterized the second count as "void," and "invalid as a matter of law," concluding the jury's general guilty verdict could not stand because it was impossible to determine on which count it was based. *Id.*

Appellant also finds *Sanchez v. State*, 209 S.W.3d 117 (Tex.Crim.App. 2006), on point. The court there considered a jury charge in a prosecution for official oppression.[5] The definitional section of the charge did not make clear that to constitute sexual harassment, a defendant's requests for sexual favors or other conduct of a sexual nature must be unwelcome. *Id.* at 122. Nor did the abstract portion of the charge contain an instruction telling the jury it must find the defendant was aware that any of his sexual conduct was unwelcome. The court further stated that the application paragraph of the charge did "nothing to ameliorate these deficiencies." *Id.* (citations omitted). Noting that unwelcome sexual conduct and the culpable mental state of awareness that the conduct was unwelcome were "elemental facts," *id.* at 122, the court concluded that the charge failed to require the jury to find two elements of the offense to be proven before convicting. After also analyzing the evidence and argument, the court agreed

---

[5] Tex. Penal Code Ann. § 39.03(a)(3), (d) (West 2012).

with the court of appeals' holding that the error in the charge caused egregious harm. *Id.* at 125.

Neither opinion aids appellant's argument here. Unlike in *Drinkert*, 821 S.W.2d at 955, only one indicted count was submitted to the jury in this case, so there can be no doubt the jury's verdict was based on that capital murder count. The count was not void or invalid. And, unlike in *Sanchez*, 209 S.W.3d at 122, the complained-of deficiency in the charge here does not involve statutory elements of the offense. At most, the application paragraph here permitted conviction despite an immaterial variance between the charging instrument and the proof at trial.[6] *See Johnson*, 364 S.W.3d at 298; *see also Jefferson v. State*, 189 S.W.3d 305, 312 (Tex.Crim.App. 2006) (jury unanimity analysis of offense of injury to a child, also a result-of-conduct offense.)[7]

Appellant's argument that the court's charge subjected him to conviction under an invalid theory is based on comparison of the indictment's capital murder count with the charge's application paragraph for that count. Although we cannot agree with that argument, appellant is correct that the charge contains error. As his brief mentions in

---

[6] Appellant also has referred us to *Render v. State*, 347 S.W.3d 905 (Tex.App.— Eastland 2011, pet. ref'd). *Render* involves a contention the trial court erred by denying a motion to quash indictments for failure to provide the defendant fair notice of the manner and means by which he allegedly committed an aggravated assault and a murder. *Id.* at 923-24. No motion to quash is at issue in this case.

[7] Note that the court in *Sanchez*, 209 S.W.3d at 125 n.42, quoted Judge Cochran's concurring opinion in *Jefferson*, 189 S.W.3d at 316 ("Generally, adverbial phrases, introduced by the preposition 'by,' describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.") (Cochran, J., concurring).

6

passing, the charge authorized the jury to find him guilty of simple murder as a lesser-included offense.

Comparison of the application paragraph for the lesser-included simple murder offense with that for the capital murder shows that, although the two paragraphs are describing the same actus reus, they describe the manners of causing death in different terms. Inexplicably, the phrase "with defendant's hands," which in the indictment appeared in the capital murder count, found its way into the application paragraph for the lesser-included simple murder offense. By the application paragraphs, the jury thus was told it could find appellant guilty of capital murder if it determined he caused Moreno's death by choking her or by striking her with his hands, or, if it had reasonable doubt of the robbery element, could find him guilty of murder if it also determined he caused Moreno's death by choking her <u>with his hands</u> or by striking her with his hands.

The application paragraph is that portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations. *Vasquez v. State*, 389 S.W.3d 361, 370 (Tex.Crim.App. 2012). Because the application paragraph "specifies the factual circumstances under which the jury should convict or acquit, it is the 'heart and soul' of the jury charge." *Id.*, *citing Gray v. State*, 152 S.W.3d 125, 127 (Tex.Crim.App. 2004) (charge must "apply the law to the facts adduced at trial").

As noted, appellant admitted in his written statement that he choked Moreno with two instrumentalities, his hands and the child's pants. That evidence raises the danger that the jury took note of the difference in the wording of the two application paragraphs

7

and believed it could convict of the lesser offense only if it found appellant caused the death by choking with his hands, as opposed to the pants.[8]

By definition, murder was a lesser-included offense here because it could be established by proof of the same or less than all the facts required to establish the commission of capital murder. Tex. Code Crim. Proc. Ann. art. 37.09(1) (West 2012). But the application paragraph for the lesser offense included a more specific means for the choking manner of causing death than that included for the greater offense. In the absence of evidence to support such a different statement, describing the lesser offense with greater specificity was error.

Having found error in the charge, we turn to the issue of harm. Because the error in the charge was not brought to the attention of the trial court, it will lead to reversal only if it was egregious, that is, it deprived appellant of a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State,* 758 S.W.2d 787, 788 (Tex.Crim.App. 1988). Egregious harm occurs when the error "affects 'the very basis of the case,' deprives the defendant of a 'valuable right,' or 'vitally affect[s] a defensive theory.'" *Olivas v. State*, 202 S.W.3d 137, 144 (Tex.Crim.App. 2006) (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App. 1996) and *Almanza*, 686 S.W.2d at 172)). In the egregious harm analysis, we consider (1) the charge itself, (2) the state of the evidence, including contested issues and the weight of the probative

---

[8] *See Barrios v. State*, 283 S.W.3d 348, 352-53 (Tex.Crim.App. 2009) (discussing jurors' consideration of charge).

8

evidence, (3) arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *See Hutch*, 922 S.W.2d at 171.

The State argues consideration of the entire charge weighs in favor of a conclusion the harm from the discrepancy in the two application paragraphs was not egregious.[9] The error appears only in the application paragraphs; the manner and means of Moreno's death are not referred to in the abstract portions of the charge. As the State points out, the jury could have read the entire phrase in the capital murder application paragraph, "by choking the said Amanda Moreno or by striking the said Amanda Moreno with the defendant's hands," to mean that it must find both the choking and the striking to have been with the defendant's hands. Under that reading of the capital murder paragraph, there would be no difference in the proof of the means of death described in the two application paragraphs. We agree with the State that the danger from the addition of the words "with defendant's hands" in the simple murder application paragraph is thus somewhat speculative.

Next considering the evidence and the contested issues, with his detailed confession in evidence appellant could raise but little defense to the charges. Except for the introduction of some exhibits, appellant's case was presented only through cross-examination of the State's witnesses. Through cross-examination of the medical examiner regarding the nature of some of Moreno's wounds, he attempted to cast doubt on his intent to cause her death. In argument, however, his trial counsel, in candor

---

[9] The State's argument actually is addressed to appellant's contention the charge permitted conviction on an invalid theory, but it is applicable to the issue we address as well.

9

toward the jury, had to acknowledge the evidence showed he intentionally caused Moreno's death.

Appellant's primary defense was a contention he and Moreno had a common-law marriage, giving rise to a presumption the items he took after his attack on her was their community property. In correspondence from Moreno to appellant, she expressed a committed love for him, and in the return address referred to herself as Mrs. Amanda Torres. The State denied that evidence demonstrated more than their living together, and emphasized evidence that in any event Moreno's rings were her separate property.[10] The State also emphasized the blood found on an electrical socket, indicating appellant, while still bearing Moreno's blood on his hands, unplugged the televisions and other electronic equipment he promptly pawned.

As noted, the medical evidence was to the effect that asphyxia caused Moreno's death. The medical examiner testified the blows to her body likely would not alone have killed her. He testified the evidence was consistent both with strangulation by hands and by a ligature like the child's pants. No other evidence either supported or cast doubt on appellant's statements that he choked Moreno both with his hands and the pants. The instrumentality of her choking was not a contested issue at trial, and was little discussed in the evidence.

Appellant points to statements during the State's closing argument as supporting the harmfulness of the charge error. He contends the State emphasized the evidence

---

[10] Appellant's statement contains the sentence, "I took her rings off of her fingers[,] washed the blood off and went to the pawn shop."

10

appellant choked Moreno with the pants by the statement, "That's the intentional murder in this case, a choking by her own orphaned daughter's pants." In its context, we do not agree the State was arguing for one means of choking over another. The prosecutor also referred to a victim "looking into the eyes of the man that you love and being choked by his own hands." Both the statements were part of the prosecutor's argument that capital murder is "a murder plus a robbery." Nor does the reference to "intentional murder" distinguish between capital murder and the lesser simple murder. Both application paragraphs told the jury they must find appellant intentionally caused Moreno's death.

In short, our review of the record shows the arguments of counsel involved only scant mention of the means of Moreno's choking, and no argument favoring one means over the other.

Egregious harm is a difficult standard to prove, and the determination must be made on a case-by-case basis. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex.Crim.App. 2011) (*citing Hutch*, 922 S.W.2d at 172). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor,* 332 S.W.3d at 490 (*citing Almanza*, 686 S.W.2d at 172). Egregious harm causes actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

We find the addition of the words "with defendant's hands" in the lesser-included offense application paragraph did not affect the very basis of the case, deprive appellant

11

of a valuable right, or vitally affect his defensive theory. Neither the omission of the phrase "with defendant's hands" in the capital murder application paragraph nor its inclusion in the lesser-included offense application paragraph require reversal. We resolve appellant's issue against him and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.